## Henry F. McCloskey

### *v.*

## Cyrus H. McCormick *et al.*

1. Bill of Sale—*cannot be contradicted.* Where a bill of sale was for a "lot of empty boxes and empty barrels (not including 442 tierces and 100 barrels of salt now in the pork house) and all. other movable effects now in the pork house," cannot be contradicted by evidence to prove that it was intended that fifty other barrels of salt, then in the pork house, should not be included. The bill of sale is the agreement of the parties, and it must, like other agreements, speak for itself.

2. Receipt—*may be explained or contradicted.* A mere receipt may be explained or even contradicted, but it is otherwise with written agreements. A written instrument may be both a receipt and an agreement, and, in such case, the portion operating only as a receipt may be explained like any other receipt; but not so of the part which contains the contract of the parties.

Appeal from the Circuit Court of Jo Daviess county; the Hon. Benj. R. Sheldon, Judge, presiding.

This was an action of trover, brought by Cyrus H. McCormick, William S., McCormick and Leander J. McCormick, against Henry McCloskey, to the August term, 1864, of the Jo Daviess county Circuit Court. The plaintiffs counted for fifty barrels of salt. The defendants filed the plea of not guilty; upon which there was an issue to the country. At the October term, 1864, a trial was had before the court and a jury.

On the trial, plaintiff introduced as a witness *V. Sangfield,* who testified that the plaintiffs became the owners of the personal property which had been owned by John Bennett; that he was the agent of the plaintiffs, and had received from Nathan Corwith what he supposed was a correct list of the tierces and salt in the pork house; that A. E. Small, Esq., was the agent of the plaintiffs; that defendants had been negotiating with witness for the purchase of the pork house and of said personal property; that the pork house had been

bid off by Bennett, who had not taken it; that McCloskey was to have that and the personal property in it for his bid of $1200, except the tierces and the salt; said sale was on execution against Bennett; that after this contract of sale, on the 28th day of March, A. D. 1864, defendants' witnesses went to the office of said A. E. Small; said plaintiffs' counsel then asked witness to state what took place at the time in the office of said A. E. Small; to which the counsel for the said defendants then and there objected, and asked the said witness if any writing passed between any of the parties at the time, and if paper here shown witness is such paper or writing; that witness testified that the paper shown witness was at the request of defendant, made and delivered to said defendant when they were in said Small's office; that the signature thereto is genuine.

Thereupon, the counsel for the defendant did then and there object to the introduction of any oral testimony as to what took place at the time of sale, for the reason that the writing was the best proof thereof, and that no oral testimony could be admitted to vary or contradict the same, which objection was then and there overruled by the court, who did then and there admit the witness to testify as to what took place at the time of sale; to which ruling of the court, the counsel for the defendant then and there excepted.

The paper was in the words and figures following, that is to say:

Mr. H. F. McCloskey,

*To* C. H. McCormick & Co.    *Dr.*

March 28, 1864.

To one brick warehouse, situated on the Walsh lot, adjoining the stone pork house; two large blocks; one small block; three large tubs; two small tubs; two lard boxes; one lard press; two kettles and furnaces; one scale; lot of empty boxes and empty barrels, (not including 442 tierces and 100 barrels of salt now in pork house,) all other movable effects now in said pork house.

The above property included in and paid for this day as part of the sum of $1200, this day paid the sheriff of Jo Daviess county, Illinois, for purchase under execution of the southeast one-half of lot six, in Water street, in the city of Galena.

[Signed]     C. H. McCORMICK & CO.,
Per A. E. Small.

Witness then testified that when he, the witness, specified the articles and mentioned 106 barrels of salt, that witness remarked "more or less;" that Small said that it made no difference, that the salt was not included. Witness further testified, after objection made and being overruled and the ruling excepted to by the defendants for the reasons above mentioned, that the defendant had afterwards told him "that he was even now;" that there was a surplus of 50 barrels of salt. Witness testified that he sold the scales several weeks before the sale was made to the defendant; that he did not know that the defendant knew of the sale; that he mentioned the matter to him, and that he told defendant that he could not return the scales; that he told defendant that he would write plaintiffs, and that he did write to plaintiffs.

*Cross-examined:* Witness testified that Mr. Small made the sale, and that witness took the money; that he furnished the memorandum of the salt to Mr. Small—the memorandum was for 106 barrels of salt, "more or less;" that Small said "that the salt was not included." Witness further testified that he sold the 106 barrels of salt for $2.75 per barrel; that it was worth $3.25 per barrel; that he sold the salt for all he could get for it; that he tried to sell the salt to two or three persons; that it was packer's salt, and not wanted in the Galena market at that time; that he could get no more for the salt he sold.

*E. A. Small,* a witness produced and sworn on behalf of the plaintiffs, testified that he was present when the writing was made; and therefore the counsel for the plaintiffs asked the witness to state what transpired at the time the writing

was made, to which the counsel for the defendant then and there excepted, for the reason that the contract was in writing, and that oral testimony could not be admitted to vary or control the same; which objection was overruled by the court, and to which ruling of the court, the said counsel for the said defendant then and there took exception; and thereupon the witness testified that when the memorandum was made, Langfeldt brought the defendant to witness' office; that it had been previously agreed between Mr. Langfeldt and the defendant that $1200 was to pay for the pork house and all the personal property except the salt and the tierces; that defendant said he thought he ought to have the scales; that Langfeldt said they were sold; that after the witness heard of the 50 barrels of salt, he met defendant near Lorrain's office, and spoke to him about it; that defendant said he had got the salt and intended to keep it; that witness afterwards went to see defendant at his office at the desire of plaintiffs; that Mr. Fleming was present; that witness told defendant that the plaintiffs had requested him to call upon defendant about that salt; that defendant replied that he had no moral right to keep the salt, but had a legal right, and should do so; that witness demanded the salt, and defendant peremptorily refused to deliver the same; witness Small further testified that he was attorney of the plaintiffs, and as such, signed the paper given to defendant; that plaintiffs ratified the act so far as the execution of the paper was concerned; that the sheriff gave defendant a certificate of sale of the pork house; that Sheriff's sale to Bennett had taken place when the paper given to defendant was made out and delivered; the sheriff's certificate was delivered to defendant at the time the memorandum in writing was made.

And, thereupon, the defendant moved the court to exclude from the consideration of the jury all the oral testimony given on the trial of said cause, relative to the sale of the personal property, for the reason that the written instrument was the best and only competent proof thereof; which motion was

by the court then and there overruled, and to which ruling of the court, in overruling said motion, the counsel for the defendant then and there excepted.

The jury returned a verdict for plaintiff for the sum of $142.50. The defendant then moved the court for a new trial, which was overruled, and an exception taken, and thereupon the court rendered a judgment on the verdict. To reverse which, defendant prosecutes this appeal; and assigns for error the admission of parol evidence of the terms of the sale from plaintiffs to defendant, and in overruling the motion for a new trial.

Messrs. GLOVER, COOK & CAMPBELL for appellant.

The court erred in permitting parol evidence to be given of the property actually sold by appellant to appellees.

The fact is that in this case the written contract of sale is changed and contradicted by parol evidence, and this without any pretence that the written contract was obtained by any fraud, or that it was not written just as the parties intended it should be at the time. *McEvoy* v. *Long*, 13 Ill., 150 ; *Lane* v. *Sharp*, 3 Scam., 572 ; *Harlow* v. *Roswell*, 15 Ill., 57 ; *Abrams* v. *Pomeroy*, 13 Ill., 133 ; *Henry* v. *Grove*, 12 Ill, 288 ; *Jackson* v. *McIntosh*, 31 Barb., 267 ; *Tiblets* v. *Percy*, 24 Barb., 39 ; *Blassom* v. *Griffin*, 13 Barb., 569.

Messrs. LELAND & BLANCHARD for appellees.

The memorandum does not purport to be either a deed of the real estate, or a conveyance of the personal estate. It is a mere bill of the articles, or bill of parcels, amounting to no more than a receipt for the $1200, a declaration in writing by Small, the attorney of the appellees, after the contract had been made, as to the articles of property which he understood were included. The signing his name by Small made the list no better than it would have been if he had handed it to McCloskey without signature, or had uttered the words

merely, and they had never been written. Suppose Small had accidentally omitted one or more articles from the list in writing or conversation, at the time he wrote the list, would the acceptance of his list by appellants have precluded him from showing that he actually bought and paid for such omitted article or articles? *Blood* v. *Harrington*, 8 Pick., 552; *Graves* v. *Hamond*, 9 Barb. S. C., 480; *O'Brien* v. *Gilchrist*, 34 Maine, 554; *Sparks* v. *Kowls*, 17 Ala., 211; 1 Green. Ev., 2 Phillip's Ev., note 489, p. 682; *Powell* v. *Gatewood*, 2 Scam., 22.

If, in the last case, the quality of the tobacco could be proved to be different from that described in the writing, of course the quantity could be also.

The memorandum is neither a bill of sale, nor an agreement, and could only be used by Small as a memorandum to refresh his memory, like any other list of articles sold; and McCloskey could certainly have shown the list to have been correct. "The written memorandum was not the contract, and was only given to show to what objects the receipt at its foot applied." *Harris* v. *Johnson*, 3 Cranch, 318; *Terry* v. *Wheeler*, 25 N. Y., 520.

Mr. Chief Justice Walker delivered the opinion of the court:

It appears from this record that the sheriff of Jo Daviess county sold a warehouse and lot on execution against appellees. The purchaser failed to take the property and pay his bid. An agreement was then made between appellees and appellant, that the latter should become the purchaser, together with the personal property it contained, except some tierces and some salt. A written memorandum in the form of a bill of sale was made to appellant by appellees' attorney. It contained a list of property, amongst which was this item: a "lot of empty boxes and empty barrels (not including 442 tierces and 100 barrels of salt now in the pork house,) all other movable effects now in

the pork house." This written memorandum states that the property specified in the bill of sale, is included in and paid for by the $1200 paid the sheriff, for the purchase of the pork-house and lot. It is insisted that this bill of sale was executed in mistake, and included fifty barrels of salt, not intended to be sold. That instead of there being but one hundred barrels of salt, as received, there were one hundred and fifty.

It is insisted that appellant had the right to explain the bill of sale, and to show that no portion of the salt was in fact sold. It will be observed that but one hundred barrels of the salt and the tierces were reserved, and the other moveable effects, then in the house, were included. The right to show the mistake is placed upon the ground that the bill of sale was in effect but a receipt, and as such, it could be either contradicted or explained. In that respect it speaks its own language.

If appellees were permitted to prove that this bill of sale contained articles not sold, it seems to us that it is not explaining a receipt, but contradicting an agreement or contract. It says that this fifty barrels of salt was sold to appellant, and it is proposed to prove that they were not sold. That would not be to show that the receipt would not specify the true amount, but it would be to contradict the agreement to sell a portion of the property. Cases have held that the receipt in a deed of the consideration money may be shown to be incorrect in amount, or that it was not paid, but evidence is not receivable to invalidate the legal effect of the instrument. Nor has it ever been held that it may be shown that a tract of land described in the deed was not intended to be conveyed, or a tract was omitted which should have been included. To do so, would be to contradict the written agreement of the parties. Where such mistakes occur, the only remedy is in equity.

It may be that the claim of this fifty barrels of salt is an ungracious one. But if so, the rules of law will not

yield to relieve against hard cases. Until the Legislature shall authorize courts of law to reform contracts because of a mistake, they are powerless to afford relief.

The judgment of the court below is, therefore, reversed, and the cause remanded.

*Judgment reversed.*